## In re Anonymous No. 57 D.B. 77

Disciplinary Board Docket no. 57 D.B. 77.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

JOHNSON, *Member,* August 24, 1979— Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above proceeding.

## I. HISTORY OF PROCEEDINGS

On December 12, 1977, a petition for discipline (57 D.B. 77) was filed by Chief Disciplinary Counsel

against respondent. The petition contained three charges arising out of respondent's handling of two unrelated cases for the same client, and respondent's oral and written communications with his client and petitioner during the investigative period of the original complaint. All three charges allege separate violations of the Disciplinary Rules involving dishonesty, fraud, deceit, or misrepresentation; handling a legal matter without adequate preparation; and neglect of a legal matter. The third charge, in addition thereto, alleges an attempt by respondent to exonerate or limit liability to a client for his personal malpractice.

The thrust of the complaint is that respondent was retained by a client to represent her in a claim against the University of [ ] and an employe of the University arising out of an alleged assault upon her. Shortly thereafter, the same client retained him to represent her in a claim for personal injuries resulting from her automobile being struck by a vehicle operated by one other than the owner. The respondent failed to take the appropriate actions although he assured his client such actions were being taken. In response to a letter inquiry from petitioner prior to the filing of formal charges, respondent made statements which subsequent investigation indicated were false and misleading.

On March 30, 1978, a second petition for discipline (20 D.B. 78) was filed by Chief Disciplinary Counsel against respondent. The allegations charge that after receipt of the petition for discipline filed at 57 D.B. 77, namely on January 19, 1978, respondent filed of record in the University of [ ] case (Charge 1 of 57 D.B. 77) affidavits of service purporting to reflect service of a summons in trespass by a constable upon both the University

and its employe on January 29, 1976. Also the affidavits filed were signed by respondent as a Notary Public with jurats dated May 15, 1976 and September 7, 1976, although respondent had not obtained his notary commission until April 13, 1977.

The petition at 57 D.B. 77 had been referred to hearing committee [ ]. The petition at 20 D.B. 78 was referred to the same hearing committee and both petitions were consolidated for hearing.

The initial hearing was held June 28, 1978, and subsequent hearings were held on July 25, 1978, August 28, 1978 and November 27, 1978. Respondent was represented at all hearings except that of November 27, 1978 by [ ], Esq.

We have reviewed the transcript of testimony presented before the hearing committee as well as the exhibits admitted in evidence. We therefore adopt the findings of fact of the hearing committee which were as follows:

1. Respondent is an attorney admitted to practice law in the Commonwealth of Pennsylvania and his office is located at [ ], [ ], [ ] County, Pa.

2. On December 10, 1973, [A], hereinafter [A], was arrested and allegedly assaulted by [B], who was then employed as a security officer by the University of [ ], and who was therein allegedly acting within the scope of that employment.

3. On December 13, 1973, [A] retained respondent, and he undertook to represent her in connection with criminal charges lodged against her by [B] and in regard to any possible civil action against [B] and/or the University of [ ] resulting from the December 10, 1973 incident.

4. On December 28, 1973, respondent represented [A] at a hearing before a City Magistrate, at

which hearing the criminal charges against her resulting from the December, 1973 incident were dismissed. On June 28, 1974, a praecipe for writ of summons in trespass against the University of [   ] and [B] in the Court of Common Pleas of [   ] County was filed by respondent's associate, [   ], Esq., at no. [   ] July Term, but respondent took no immediate steps to cause the writ to be served upon defendants.

5. Thereafter, respondent caused the same writ to be reissued on September 16, 1974 and again on December 31, 1975, but on neither occasion did respondent take steps necessary to cause defendants to be served with the writ.

6. From June, 1974 to February, 1976, [A] regularly telephoned respondent's office, requesting status reports on her case to which inquiries respondent either made no response or responded in such a way as to give [A] false assurances that everything that could be done on her behalf was being done.

7. Between October, 1975 and October, 1976, respondent and the insurer for the University of [   ], [C] Insurance Company, engaged in correspondence with respect to the action brought on behalf of [A] but for the most part, respondent failed to respond to the inquiries of [C] or otherwise ignored its correspondence.

8. On January 29, 1976, respondent caused a summons in trespass to be served upon both [B] and the University of [   ] at no. [   ] July Term by [D], Constable.

9. Although the exact date is uncertain, [D] executed affidavits of service of the summons in trespass with respect to both [B] and the University of [   ] on or about January 29, 1976.

10. Although the exact date is uncertain, re-

spondent acting in his capacity as a notary public, notarized the affidavits of service of [D], Constable, during calendar year 1977 but on or after April 13, 1977, the date of commission of respondent as a notary public.

11. Although the jurats of the two affidavits of [D], Constable, with respect to service upon the University of [ ] and [B] indicate that they were notarized by respondent as a notary public on May 15, 1976 and September 7, 1976 respectively, respondent notarized the same during calendar year 1977 and the insertion of the year 1976 by respondent was inadvertent and was not intended to deceive.

12. Respondent knew or should have known that civil actions in the court of common pleas must be served by the sheriff in order to effectuate valid service pursuant to Rule 1009 of the Rules of Civil Procedure; and respondent consequently, knew or should have known that service of process by a constable was not valid service pursuant to the Rules of Civil Procedure.

13. On December 12, 1977, a petition for discipline was docketed against respondent at 57 D.B. 77 concerning respondent's representation of [A] in her cause of action against the University of [ ] and [B] and concerning an additional action brought by her against [E] and [F], an action unrelated to the action brought against [B] and the University of [ ].

14. The petition for discipline at 57 D.B. 77 was served upon respondent on December 13, 1977.

15. On January 10, 1978, respondent caused to be filed of record, in connection with the case against the University of [ ] and [B] at no. [ ] July Term, the two hereinabove described affidavits of service, purporting to reflect that service of the

summons in trespass had been made upon both [B] and the University of [ ] on January 29, 1976 by [D], Constable.

16. Although the affidavits of service were executed by [D], Constable, on or shortly after January 29, 1976, they were not filed of record until January 10, 1978 and it is apparent that respondent's motivation for filing the affidavits of service was the initiation of disciplinary proceedings against him on December 12, 1977 at 57 D.B. 77 and not respondent's pursuit of his client's interests.

17. On December 2, 1977, defendant University of [ ] filed an answer and new matter asserting the statute of limitations as a defense.

18. Although defendant University of [ ] and [B] have not raised the defense of failure of service, such defense may be raised at any time in the proceedings.

19. The combination of respondent's failure to take affirmative steps to have defendants served with process in the [A] v. University of [ ] and [B] action in accordance with the Rules of Civil Procedure and the assertion by defendants of the applicable statute of limitations has materially prejudiced the legal viability of [A]'s claims against those defendants.

20. On January 24, 1978 subsequent to the filing of a petition for discipline against respondent at 57 D.B. 77 on December 12, 1977, and subsequent to the filing of answer by the University of [ ], respondent by letter dated January 24, 1978, purported to advise [A] that her action against the University of [ ] and [B] might be imperiled by the defense of statute of limitations; but such letter fails to advise her that respondent's negligence is responsible for her predicament.

21. On December 13, 1973, [A] sustained personal injury and her automobile suffered property damage, when the automobile she was driving was struck by a car owned by [E] and operated by [F].

22. On or about December 13, 1973, [A] retained respondent and he undertook to represent her in personal injury and property damage claims against [E] and [F].

23. On July 7, 1975, respondent filed on behalf of [A] a complaint in trespass in the [    ] County Court of Common Pleas, Arbitration Division, at no. [    ] of 1975.

24. The complaint at no. [    ] of 1975 named only [E] as a defendant and incorrectly alleged that he had been operating the automobile which collided with [A]'s.

25. On September 23, 1975, the sheriff's return on the complaint at no. [    ] of 1975 showed defendant was "not found."

26. From June, 1974 to February, 1976, [A] regularly telephoned respondent's office, requesting status reports on her case to which inquiries respondent either made no response or responded in such a way as to give [A] false assurances that everything that could be done on her behalf was being done.

27. On or about February 23, 1976, respondent presented to the court a petition to amend caption in the action at no. [    ] of 1975 and secured an order of court permitting the inclusion of [F], driver of the [E] vehicle, as a defendant in the action.

28. On February 24, 1976, respondent by letter requested [A]'s presence at an arbitration hearing scheduled for May 10, 1976, in regard to the action at no. [    ] of 1975.

29. On April 5, 1976, respondent caused the

complaint at no. [ ] of 1975 to be reinstated, but did not take any apparent steps to effectuate service of the complaint upon defendants.

30. [A] appeared for the hearing at no. [ ] of 1975 scheduled for May 10, 1976, but the hearing was not held since respondent had failed to effectuate service of the complaint upon defendants.

31. At that time, respondent did not advise [A] of his failure to cause defendants to be served, but rather, informed her only that her case against [E] and [F] was "not docketed."

32. On December 15, 1977, the Court of Common Pleas of [ ] County granted defendants' motion for summary judgment in the action at no. [ ] of 1975, which motion asserted the defense of statute of limitations as to the claim of [A] for personal injuries against defendants.

33. On January 3, 1978, respondent filed notice of appeal to the Superior Court of Pennsylvania in the action at no. [ ] of 1975 and which appeal is still pending insofar as this hearing committee is aware.

34. On January 24, 1978, subsequent to the filing of a petition for discipline against respondent at 57 D.B. 77 on December 12, 1977, and subsequent to the granting of defendants' motion for summary judgment by the Court of Common Pleas of [ ] County at no. [ ] of 1975, respondent by letter dated January 24, 1978 purported to advise [A] that her action against [E] and [F] had been dismissed but such letter fails to advise her that respondent's negligence is responsible for her predicament.

35. The combination of respondent's failure to take affirmative steps to have defendants served with process in regard to the suit at no. [ ] of 1975 and the applicable statutes of limitations concern-

ing the type of action involved has materially prejudiced the legal viability of [A]'s claims against [E] and [F].

36. On May 5, 1975, petitioner wrote to respondent advising him of the allegations of misconduct on his part in regard to [A]'s claims against the University of [   ] and against [E] and [F].

37. On June 16, 1977, respondent replied to petitioner by letter in which letter respondent purports to explain away the precarious predicament of [A] with respect to both actions and asserted incorrectly that [A]'s rights had been protected.

38. On June 29, 1977, [A] visited respondent at his office and respondent advised her incorrectly that she had no cause for alarm and that all of her rights with respect to both actions had been protected.

39. On January 24, 1978, subsequent to the filing of a petition for discipline against respondent at 57 D.B. 77 on December 12, 1977, respondent wrote to [A] in which he purported to explain her predicament with respect to the action brought by her against the University of [   ] and [B] and in the action brought by her against [E] and [F].

40. The letter of January 24, 1978, from respondent to [A] clearly attempts to establish responsibility for [A]'s predicament in both actions to changes in the law of the Commonwealth of Pennsylvania for which respondent could not be responsible and fails to advise [A] that it was his conduct that had materially prejudiced the legal viability of [A]'s claims in regard to both suits.

41. The statements made by respondent to petitioner by letter of June 16, 1977 and to [A] in his meeting with her on June 29, 1977, and in respondent's letter to [A] of January 24, 1978, failed

adequately to advise [A] and petitioner that [A]'s claims had been prejudiced and in fact, affirmatively advised petitioner and [A] to the contrary, assuring both petitioner and [A] that [A]'s claims were still legally viable.

42. Under the circumstances, such statements of respondent to petitioner and to [A] were knowingly false representations and were made with the intent to deceive and for the purpose of concealing from petitioner and from [A] the legal effect of his actions in regard to the two claims, in an attempt to exonerate himself from, or to limit, his liability to her for his personal malpractice.

## II. DISCUSSION

Respondent was retained to represent his client in two separate unrelated cases. There is an abundance of evidence that respondent handled both cases in an incompetent manner, neglected his client's cause in both cases, and then in an attempt to cover his incompetence, made intentionally deceitful and false statements to his client on many occasions. This is the gravamen of Charges 1 and 2 contained in the petition at 57 D.B. 77. After the complaint of his client to the disciplinary board was brought to his attention, respondent continued his attempted deception to cover his handling of the two cases, both in statements and correspondence to his client and in correspondence to assistant disciplinary counsel.

Respondent's handling of both claims on behalf of his client may well be the basis for a malpractice claim. Respondent by his letter of January 24, 1978, to his client attempted to establish responsibility for his client's predicament in both actions on changes in the law of the Commonwealth of Pennsylvania

for which respondent could not be responsible and failed to advise her that it was his conduct that had materially prejudiced the viability of her claims.

We agree with the hearing committee that respondent violated the following Disciplinary Rules:

With regard to Charge 1 of the Petition at 57 D.B. 77:

1-102(A)(4) Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

6-101(A)(2) Dealing with the handling of a legal matter without preparation adequate in the circumstances.

6-101(A)(3) Neglect of a legal matter entrusted to him.

With regard to Charge 2 of the petition at 57 D.B. 77:

1-102(A)(4) supra

6-101(A)(2) supra

6-101(A)(3) supra

With regard to Charge 3 of the petition at 57 D.B. 77:

1-102(A)(4) supra

6-101(A)(2) supra

6-101(A)(3) supra

6-102(A) providing that a lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

In view of its findings of fact the hearing committee dismissed the charges brought against respondent by petition for discipline at 20 D.B. 78. Disciplinary counsel has filed a brief on exceptions directed to the hearing committee's finding of fact concerning service of process upon the University of [ ] and its employe and those in regard to the circumstances and events surrounding the preparation, execution and notarization of the two af-

fidavits of service which respondent filed. An examination of the affidavits of service, and the circumstances under which they were notarized by respondent as of a date prior to the time he was commissioned as a notary public, together with the fact they were not filed until after the petition for discipline at 57 D.B. 77 would lead to a strong suspicion that they were concocted to protect respondent from the consequences of his handling of the case. However, the learned hearing committee heard the testimony of the constable who, although hazy in his recollection, did testify that he had served the summons and had signed the returns shortly after the service. They heard the testimony of respondent that the dates inserted in the jurats were inadvertently put there, thus indicating a notarization by him at a time prior to his commission. The hearing committee is recognized as the trier of the facts with the opportunity to observe the demeanor and manner of witnesses testifying before them. For this reason we do not reverse their findings of fact in this regard and concur in the dismissal of the charges contained in the petition for discipline at 20 D.B. 78.

In disciplinary matters, respondent is a recidivist as can be seen from the following:

1. On November 7, 1974, chief disciplinary counsel at C4-74-111 delivered an informal admonition to respondent for his conduct which was found to be in violation of Disciplinary Rules 6-101(A)(3) and 9-102(B)(4).

2. On April 21, 1975, chief disciplinary counsel at C4-75-04 delivered an informal admonition to respondent for his conduct which was found to be in violation of Disciplinary Rules 1-102(A)(4); 6-101(A)(3) and 7-102(A).

3. On October 5, 1976, chief disciplinary counsel at C4-75-326 delivered an informal admonition to respondent for his conduct which was found to be in violation of Disciplinary Rules 1-102(A)(4); 2-110(A)(2); 6-101(A)(3); and 7-101(A)(1), (2), (3).

The summary of complaint attached to the informal admonition in each of the above three cases indicates that respondent has established a pattern of neglect and inadequate preparation in the handling of legal matters for clients followed in each case by prevarication and misrepresentation when the client has made inquiry concerning the status of the client's affairs.

The hearing committee recommended that respondent be suspended from the practice of law for a period of three months. We cannot adopt the recommendation of the hearing committee. The Pennsylvania Rules of Disciplinary Enforcement, Rule 218, provide that no attorney suspended for a period exceeding three months may resume practice until reinstated by order of the Supreme Court after petition therefor pursuant to the Rules. Upon the filing of a petition, the matter will be referred to a hearing committee and the suspended attorney shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the Bar or the administration of justice nor subversive of the public interests. To adopt the recommendation of the hearing committee would permit respondent to be reinstated at the conclusion of the three-month period without the burden of proving his

competency and qualifications under Rule 218. In view of the lack of basic knowledge in the handling of his client's affairs* exhibited by respondent and his repeated efforts to deceive his clients to cover up his inadequacies, we conclude that he should be put to the burden placed upon a petitioner under Rule 218.

## III. RECOMMENDATION

The Disciplinary Board respectfully recommends to your honorable court that respondent, [Anonymous], be suspended from the practice of law for a period of four months.

## ORDER

And now, October 1, 1979, the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated August 24, 1979 is accepted and it is ordered that [Anonymous], be, and he is forthwith suspended from the Bar of the Supreme Court and all the courts under its supervisory jurisdiction for a period of four months and until further order of this court.

---

*As one example, respondent had a summons in trespass served by a constable in violation of Rule 1009 of the Rules of Civil Procedure.